**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James J. Everett, | No. CV-11-836-PHX-SMM |
| Plaintiff, | **MEMORANDUM OF DECISION AND ORDER** |
| v. | |
| American Family Mutual Insurance Co., | |
| Defendant. | |

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. 59) and Defendant's Motion for Summary Judgment (Doc. 61). On January 1, 2013, the Court ordered the parties to submit further briefing pursuant to Rule 56(f)(2), FED.R.CIV.P. (Doc. 77.) The matter is now fully briefed. (Docs. 66, 67, 72, 74, 78, 79.) After reviewing the briefs and having determined that oral argument is unnecessary,[1] the Court will deny Plaintiff's motion for partial summary judgment, and grant Defendant's motion for summary judgment in part, and deny in part.

## BACKGROUND

Plaintiff was insured by Defendant under a policy that contained, among other provisions, a clause guaranteeing him against loss caused by theft. (Doc. 59 at 6.) The policy excluded from coverage theft committed by Plaintiff's "spouse who is a resident of

---

[1] The parties' request for oral argument is denied because the parties have had an adequate opportunity to present their written arguments, and oral argument will not aid the Court's decision. See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d 724, 729 (9th Cir. 1991).

1  [Plaintiff's] household." (Id. at 7.)

2  On December 28, 2008, Plaintiff informed his then-wife, Ms. Colleen Brusseau, that he intended to move out of the marital residence "sometime soon." (Doc. 62 ¶ 10.) Ms. Brusseau filed for divorce from Plaintiff on February 2, 2009. (Id. ¶ 12.) On February 14, 2009, Plaintiff visited his Prescott vacation home; the last time Plaintiff had visited the residence prior to this occasion was in November of 2008. (Id. ¶¶ 3-4.) Upon entering the Prescott home, Plaintiff allegedly discovered that a large amount of personal property was missing. (Id. ¶ 3.)

Plaintiff called the Yavapai County Sheriff's Office that same day, February 14, to report the property missing. (Id. ¶ 5.) Officer Murray of the Yavapai County Sheriff's Office took a report. (Doc. 62-1 at 47.) Plaintiff informed Officer Murray that among the items missing were four Honda "Quads" and a Honda motorcycle, which were registered to him in Arizona. (Id. at 48.) The officer checked and found that no Hondas were registered to Plaintiff in Arizona. (Id.) The officer then checked the Vehicle Identification Numbers of the Hondas, and found that they were all registered to Ms. Brusseau. (Id.)

Officer Murray called Plaintiff back and informed him that the Hondas were registered to Ms. Brusseau. (Id.) Plaintiff informed the officer that Ms. Brusseau was his wife, but that they were separated. (Id.) The officer later contacted Ms. Brusseau by telephone on March 15, 2009, and she told the officer that she took the items from the Prescott property, and that Plaintiff knew she had done so. (Id. at 49.)

On February 20, 2009, Plaintiff's attorney O'Connor sent a letter to Ms. Brusseau's attorney. (Doc. 62 ¶ 16.) The letter stated: "It appears your client has taken 95% of the furnishings from the Prescott residence. Demand is made for return of these items immediately since its [sic] my clients [sic] sole and separate property." (Doc. 62-1 at 72.)

At the divorce hearing, Ms. Brusseau again admitted to taking various items from the Prescott property. (Doc. 62 ¶ 17.) A Decree of Dissolution of Marriage from the Superior Court of Maricopa County was entered in June of 2010. (Doc. 69 ¶ 18.) As part of that decree, the court found that "with two exceptions, the tangible personal property [Brusseau]

1  took from the Prescott house consisted of her sole and separate property . . . and an equitable
2  portion of the community property in that house." (Doc. 62-2 at 12.) The two exceptions
3  found by the court were a washer and dryer, and the four Hondas; the court thus ordered Ms.
4  Brusseau to reimburse Plaintiff for the value of these items. (Id.)

5  On March 2, 2009, prior to the entry of the divorce decree, Plaintiff submitted a claim
6  with Defendant for theft of the personal property taken from the Prescott residence. (Id. at
7  2.) Defendant eventually denied Plaintiff's claim. (Id. at 5.) Plaintiff thereupon brought this
8  action in the Maricopa County Superior Court, alleging one count of breach of contract and
9  one count of breach of the duty of good faith and fair dealing. (Doc. 1.) Defendant timely
10 removed to this Court. (Id.)

11 On June 1, 2012, Defendant brought its motion for summary judgment, arguing that
12 there exists no genuine issue of material fact and that judgment in its favor is appropriate as
13 a matter of law. (Doc. 59.) Defendant contends that there is no question that: (1) Plaintiff's
14 ex-wife was a member of Plaintiff's "household" at the time of the theft and thus the theft
15 is not covered under the policy; (2) Plaintiff breached the cooperation clause of the policy;
16 (3) Plaintiff violated the material misrepresentation/fraud clause of the policy; (4) Defendant
17 acted in good faith in adjusting Plaintiff's claim; and (5) there is no evidence to support
18 Plaintiff's punitive damages claim. (Id. at 1.) In its additional briefing, Plaintiff also argues
19 that Ms. Brusseau did not commit any "theft" to trigger coverage under the policy. (Doc.
20 79.)

21 Plaintiff simultaneously brought his motion for partial summary judgment, arguing
22 that the undisputed facts show that his ex-wife was not a member of his household at the time
23 she took the property from the Prescott residence. (Doc. 61.)

## LEGAL STANDARD

### I.  Motion for Summary Judgment

26 A court must grant summary judgment if the pleadings and supporting documents,
27 viewed in the light most favorable to the nonmoving party, "show[] that there is no genuine
28 dispute as to any material fact and the movant is entitled to judgment as a matter of law."

- 3 -

1  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v.
2  Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law determines
3  which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also
4  Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the outcome of the suit
5  under the governing law will properly preclude the entry of summary judgment." Anderson,
6  477 U.S. at 248.  The dispute must also be genuine, that is, the evidence must be "such that
7  a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d
8  at 1130.

9        A principal purpose of summary judgment is "to isolate and dispose of factually
10 unsupported claims." Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate
11 against a party who "fails to make a showing sufficient to establish the existence of an
12 element essential to that party's case, and on which that party will bear the burden of proof
13 at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.
14 1994).  The moving party need not disprove matters on which the opponent has the burden
15 of proof at trial.  See Celotex, 477 U.S. at 323-24.  The party opposing summary judgment
16 need not produce evidence "in a form that would be admissible at trial in order to avoid
17 summary judgment."  Id. at 324.  However, the nonmovant must set out specific facts
18 showing a genuine dispute for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
19 Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044,
20 1049 (9th Cir. 1995).

21 **II.    Breach of Contract**

22       In an action for breach of contract, the plaintiff has the burden of proving "the
23 existence of a contract, breach of the contract, and resulting damages." Chartone, Inc. v.
24 Bernini, 207 Ariz. 162, 170, 83 P.3d 1103, 1112 (App. 2004) (citing Thunderbird
25 Metallurgical, Inc. v. Ariz. Testing Lab., 5 Ariz.App. 48, 423 P.2d 124 (1976)).

26       Provisions of insurance contracts should be construed according to their plain and
27 ordinary meaning. National Bank v. St. Paul Fire & Marine Ins. Co., 193 Ariz. 581, 584, 975
28 P.2d 711, 714 (App. 1999).  The interpretation of an insurance contract is a question of law,

1  as is the question of whether the contract's terms are ambiguous. Id. In Arizona, courts must
2  construe a clause which is subject to differing interpretations by "examining the language of
3  the clause, public policy considerations, and the purpose of the transaction as a whole." State
4  Farm Mut. Auto. Ins. Co. v. Wilson, 162 Ariz. 251, 257, 782 P.2d 727, 733 (1989).

"Where the contract language is unclear and can be reasonably construed in more than one sense, an ambiguity is said to exist and such ambiguity will be construed against the insurer." Sparks v. Republic Nat'l Life Ins. Co., 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982). To determine whether such an ambiguity exists, the contract language "should be examined from the viewpoint of one not trained in law or in the insurance business." Id. Moreover, an insurance policy must be read as a whole to give "'reasonable and harmonious meaning and effect to all its provisions.'" National Bank, 193 Ariz. at 584, 975 P.2d at 714 (quoting Federal Ins. Co. v. P.A.T. Homes, Inc., 113 Ariz. 136, 139, 547 P.2d 1050, 1053 (1976)).

### III.    Bad Faith

An insurance contract differs from ordinary commercial contracts in that "'implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured.'" Zilisch v. State Farm Mut. Auto. Ins. Co., 196 Ariz. 234, 237, 995 P.2d 276, 279 (2000) (quoting Rawlings v. Apodaca, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986)). The insurer is obligated to conduct a prompt and adequate investigation, to act reasonably in evaluating the insured's claim, and to promptly pay a legitimate claim. Zilisch, 196 Ariz. at 238, 995 P.2d at 280.

An insurer commits the tort of bad faith by intentionally and without reasonable basis denying, failing to process, or failing to pay a claim. Noble v. National Am. Life Ins. Co., 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981). To show bad faith on the part of the insurer, the insured must show: (1) that the insurer acted unreasonably toward the insured; and (2) that the insurer "acted *knowing* that it was acting unreasonably *or* acted with such reckless disregard that such knowledge may be imputed to it." Trus Joist Corp. v. Safeco Ins. Co., 153 Ariz. 95, 104, 735 P.2d 125, 134 (App. 1986) (emphasis in original).

1    An insurer "may challenge claims which are fairly debatable," but "its belief in fair debatability 'is a question of fact to be determined by the jury.'" Zilisch, 196 Ariz. at 280, 995 P.2d at 279 (citing Sparks, 132 Ariz. at 529, 647 P.2d at 1127) (internal citation omitted). Furthermore, "breach of an express covenant is not a necessary prerequisite to an action for bad faith." Deese v. State Farm Mut. Auto. Ins. Co., 172 Ariz. 504, 509, 838 P.2d 1265, 1270 (1992). Thus, a plaintiff may prevail on a bad faith claim even where they may fail on a breach of contract claim. Id.

## IV. Punitive Damages

To decide whether a defendant has a valid claim for punitive damages, the court must look to the alleged wrongdoer's mental state. Linthicum v. Nationwide Life Ins. Co., 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986). Recovery of punitive damages requires more than the mere commission of a tort. Id. (citing Rawlings, 151 Ariz. at 162, 726 P.2d at 578). Punitive damages are reserved for "only those limited classes of consciously malicious or outrageous acts of misconduct where punishment and deterrence is both paramount and likely to be achieved." Linthicum, 150 Ariz. at 331, 723 P.2d at 680.

The "evil mind" of the wrongdoer is what distinguishes conduct worthy of the imposition of punitive damages, but "[i]n whatever way the requisite mental state is expressed, the conduct must also be aggravated and outrageous." Id.; see Rawlings, 151 Ariz. at 162, 726 P.2d at 578 (finding that punitive damages are appropriate in bad faith tort actions "when, *and only when*, the facts establish that defendant's conduct was aggravated, outrageous, malicious or fraudulent.").

While the question of whether to impose punitive damages is left to the jury if reasonable evidence will support them, the evidence "must be more than slight and inconclusive such as to border on conjecture." Farr v. Transamerica Occidental Life Ins. Co., 145 Ariz. 1, 9, 699 P.2d 376, 384 (1984). Moreover, a plaintiff bears the burden of proving that a defendant acted with the requisite "evil mind" by clear and convincing evidence. Linthicum, 150 Ariz. At 332, 723 P.2d at 681.

**DISCUSSION**

**I.    Defendant's Motion for Summary Judgment**

    **A.    Plaintiff's Breach of Contract Claim**

Defendant argues that there is no genuine issue of material fact which would entitle Plaintiff to prevail on his claim for breach of contract, and thus that judgment in Defendant's favor is appropriate as a matter of law. According to Defendant, Plaintiff cannot establish that Defendant committed any breach, in that Ms. Brusseau's removal of items from the Prescott property was not a covered loss because: (1) Ms. Brusseau was a member of Plaintiff's household at the time of the taking; and (2) Ms. Brusseau's taking did not constitute a theft under the policy. Because the Court finds that Defendant's second argument is dispositive, it need not decide whether Ms. Brusseau was a member of Plaintiff's household at the time of the incident.

Defendant purported to cover direct physical loss caused by theft of Plaintiff's personal property. (Doc. 62-1 at 16.) When the word "theft" is not defined in an insurance policy, Arizona courts will give the term its "common and ordinary meaning according to the understanding of persons in ordinary walks of life." Pac. Indem. Co. v. Kohlhase, 9 Ariz.App. 595, 598, 455 P.2d 277, 280 (1969). Theft is thus "any wrongful deprivation of property of another without claim or color of right, . . . the fraudulent and wrongful taking of the property of another." Almadova v. State Farm Mut. Auto. Ins. Co., 133 Ariz. 81, 84, 649 P.2d 284, 287 (1982) (quoting Kohlhase, 9 Ariz. App. at 598, 455 P.2d at 280).

In Arizona, theft is defined by ARIZ. REV. STAT. § 13-1802(A), which provides that "[a] person commits theft if, without lawful authority, the person knowingly: 1. Controls property of another with the intent to deprive the other person of such property . . . ." "Property of another" is defined as "property in which any person other than the defendant has an interest on which the defendant is not privileged to infringe, including property in which the defendant also has an interest . . . ." A.R.S. § 13-1801(A)(13).

ARIZ. REV. STAT. § 25-214 sets forth Arizona law regarding control and disposition of property during marriage:

> A. Each spouse has the sole management, control and disposition rights of each spouse's separate property.
> B. The spouses have equal management, control and disposition rights over their community property and have equal power to bind the community.
> C. Either spouse separately may acquire, manage, control or dispose of community property or bind the community, except that joinder of both spouses is required in any of the following cases:
>> 1. Any transaction for the acquisition, disposition or encumbrance of an interest in real property other than an unpatented mining claim or a lease of less than one year.
>> 2. Any transaction of guaranty, indemnity or suretyship.
>> 3. To bind the community, irrespective of any person's intent with respect to that binder, after service of a petition for dissolution of marriage, legal separation or annulment if the petition results in a decree of dissolution of marriage, legal separation or annulment.

The Court agrees with Defendant that Ms. Brusseau's removal of community property and her separate property from the Prescott home was not a theft under Arizona law, and thus was not a covered loss.

Ms. Brusseau's taking of her own separate property clearly was not a theft triggering coverage under the policy, because it was not "property of another." Similarly, her taking of items of community property was not a theft, because she did not *wrongfully* deprive Plaintiff of the property "without claim or color of right." It is undisputed that Plaintiff and Ms. Brusseau were not divorced or legally separated at the time she took the property from the home, nor was there any order issued by any court concerning distribution of their community property. The decree later entered in the Superior Court of Maricopa County expressly found that nearly all of the property Ms. Brusseau took was her own private property or an equitable share of the community property.[2]

---

[2] As noted above, the superior court found that the only items of Plaintiff's that Ms. Brusseau removed were a washer and dryer, and four Honda quads. Plaintiff did not make a claim under the policy for the Hondas, because they were undisputedly not covered. Any claim Plaintiff may have had under the policy for the washer and dryer was extinguished when the superior court ordered Ms. Brusseau to reimburse Plaintiff for the cost of those two items.

- 8 -

Pursuant to A<small>RIZ</small>. R<small>EV</small>. S<small>TAT</small>. § 25-214(B), both Ms. Brusseau and Plaintiff were equally privileged to manage, control, and dispose of their community property, and none of the three exceptions requiring the joinder of both spouses applied. Thus, Ms. Brusseau had lawful authority to remove the community property from the Prescott home. Accordingly, Ms. Brusseau's taking of these items of community property and her own separate property was not a theft triggering coverage under the policy. Defendant was justified in denying Plaintiff's claim for theft of these items, and Plaintiff's claim for breach of contract fails as a matter of law.

However, Plaintiff argues that regardless of whether Ms. Brusseau's taking of community property was lawful, his claim under the policy included many items which Ms. Brusseau stated that she did not take, and that Defendant therefore breached the terms of the policy by failing to cover his loss for those items. (Doc. 78 at 5.) Defendant responds to this claim by arguing that the character of the property removed from the Prescott home was fairly and fully litigated during Plaintiff's divorce proceedings, and thus that Plaintiff is precluded by collateral estoppel from re-litigating that issue here. (Doc. 79 at 8-10.)

"Collateral estoppel or issue preclusion is applicable when the issue or fact to be litigated was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment." F.D.I.C. v. Adams, 187 Ariz. 585, 593, 931 P.2d 1095, 1103 (App. 1996) (quoting Chaney Building Co. v. City of Tucson, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986)); see also Restatement (Second) of Judgments § 27. When those elements are present, Arizona permits a new defendant in a subsequent case to use the doctrine defensively to preclude relitigation of an issue. Bridgestone/Firestone N. Am. Tire, L.L.C. v. Naranjo, 206 Ariz. 447, 452, 79 P.3d 1206, 1211 (App. 2003).

During the divorce proceedings, Plaintiff argued before the superior court that Ms. Brusseau took property from the Prescott home that was not her separate property or community property, but was in fact his own separate property. (Doc. 79-1 at 1-5.) Plaintiff

- 9 -

1 testified that the total value for all property taken from the Prescott home was approximately
2 $100,000, and thus argued that Ms. Brusseau should reimburse him for half that amount,
3 approximately $50,000. (Id. at 4-5.) Despite that Ms. Brusseau testified at the divorce
4 proceedings that she did not take some of the items which Plaintiff claimed were missing
5 from the home, Plaintiff did not reduce his request for reimbursement from the court. (Id.)
6 In other words, Plaintiff's position before the superior court was that Ms. Brusseau was
7 responsible for the removal of all the property taken from the home, and thus that she was
8 required to pay for any portion of that property which was either Plaintiff's separate property
9 or was not her share of the community property.

10 The superior court's divorce decree was a final judgment, and the issue of whether the
11 property taken from the Prescott home was lawfully taken or not, by Ms. Brusseau or others,
12 was fairly and fully litigated during the divorce proceedings. Therefore, Plaintiff is now
13 precluded from re-litigating this issue here and attempting to recover for property which the
14 superior court already adjudicated was not unlawfully taken. Accordingly, the removal of
15 the items Plaintiff alleges Ms. Brusseau did not take was not a theft triggering coverage
16 under the policy, and Defendant did not breach the terms of the insurance contract by
17 denying Plaintiff's claim.

18 Because the Court finds that Defendant did not breach the contract by denying
19 Plaintiff's claim, the Court need not reach Defendant's remaining contentions that Plaintiff
20 breached both the policy's cooperation clause and its material misrepresentation/fraud clause.

21 **B.     Plaintiff's Claim for Bad Faith**

22 Defendant argues that it is also entitled to summary judgment on the matter of
23 Plaintiff's claim for breach of the covenant of good faith and fair dealing. According to
24 Defendant, Plaintiff cannot establish that Defendant acted unreasonably and knew that its
25 conduct was unreasonable. (Doc. 61 at 15.)

26 Plaintiff alleges that Defendant committed bad faith by acting unreasonably toward
27 him in regards to prompt and adequate investigation, evaluation, and processing of his claim,
28 and that Defendant knew that its conduct was unreasonable. (Doc. 66 at 14-16.) In support

1 of his claims, Plaintiff cites to emails from Defendant, and Defendant's claim management
2 logs, as evidence that Defendant forced him to go through unnecessary and unreasonable
3 steps by repeatedly requesting that he re-submit itemized lists of the missing property in
4 different formats. (Doc. 71-1 at 2-6.) Plaintiff also asserts that Defendant knowingly acted
5 unreasonably by assuming that Ms. Brusseau was telling the truth that all property she took
6 was her own, despite inconsistencies in her statements. (Doc. 66 at 15.) Finally, as
7 mentioned above, Plaintiff argues that Defendant was unreasonable in denying his entire
8 claim despite the fact that Ms. Brusseau reported that she did not take many of the items he
9 reported stolen. (Id. at 16.)

10       The Court notes that Defendant disputes whether these facts amount to evidence that
11 Defendant acted unreasonably, and the Court does not weigh the sufficiency of the evidence.
12 However, as the Arizona Supreme Court in Zilisch stated:

> while fair debatability is a necessary condition to avoid a claim of bad faith, it is not always a sufficient condition. The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable.

17 196 Ariz. at 238, 995 P.2d at 280. Moreover, an insurer's belief that its actions were fairly
18 debatable is a question of fact for the jury. Id.

19       After taking account of all disputed and undisputed facts, and making all reasonable
20 inferences from those facts in favor of Plaintiff, the Court finds that Plaintiff meets his
21 burden of raising a genuine dispute of material fact suitable for trial on his claim of bad faith.
22 Plaintiff's allegations that Defendant's investigation of his claim was inadequate are
23 supported by some evidence in the form of deposition testimony by Ms. Brusseau, and the
24 transcript of Ms. Brusseau's interview with Defendant's claims adjuster. Likewise,
25 Plaintiff's contention that Defendant imposed arbitrary requirements in an effort to
26 discourage his pursuit of the theft claim is supported by evidence showing that Defendant did
27 require Plaintiff to re-submit information in multiple formats, perhaps unnecessarily.
28 Whether or not this is truly sufficient evidence from which a reasonable jury could find bad

1  faith, the Court at this stage must make all reasonable inferences in Plaintiff's favor, and thus
2  concludes that Plaintiff raises just enough of a sufficient material dispute to narrowly avoid
3  summary judgment.  Therefore, because the jury must decide the question of whether
4  Defendant knowingly acted unreasonably toward Plaintiff in its investigation and handling
5  of his claim, and because Plaintiff has presented at least some reasonably competent
6  evidence, this Court must deny Defendant's motion for summary judgment as to the bad faith
7  claim.

### C. Plaintiff's Claim for Punitive Damages

Defendant finally argues that Plaintiff's claim for punitive damages fails as a matter of law, because Defendant presents no genuine issue of fact by which a jury could find that Defendant acted with the requisite purposeful "evil mind."  (Doc. 61 at 16.)

The Court finds that Plaintiff fails to make a sufficient showing of facts which could support imposition of punitive damages.  Punitive damages are appropriate in bad faith cases only when the facts establish by clear and convincing evidence that the defendant's conduct was "aggravated, outrageous, malicious or fraudulent."  See Rawlings, 151 Ariz. at 162, 726 P.2d at 578.  The issue of whether to impose punitive damages will be submitted to the jury for consideration only where a plaintiff has alleged reasonable evidence to support them, and that evidence must be more than slight or inconclusive.  See Farr, 145 Ariz. at 9, 699 P.2d at 384.

Here, while Plaintiff alleges that Defendant acted with an evil mind discernible through circumstantial evidence, he fails to allege any specific conduct by Defendant rising to the level of aggravated, outrageous, malicious, or fraudulent.  Plaintiff fails to allege conduct beyond that required for commission of the tort of bad faith, and thus is not entitled to have the issue of punitive damages presented to the jury.  Therefore, the Court finds that summary judgment in favor of Defendant on the issue of punitive damages is appropriate.

### CONCLUSION

Accordingly, after considering the parties' motions, including all responses, replies, statements of fact, exhibits, and supplemental briefing,

**IT IS HEREBY ORDERED granting in part, and denying in part** Defendant's Motion for Summary Judgment.  (Doc. 61.)

**IT IS FURTHER ORDERED dismissing** Plaintiff's claim for breach of contract, and **dismissing** Plaintiff's claim for punitive damages.

**IT IS FURTHER ORDERED denying as moot** Plaintiff's Motion for Partial Summary Judgment.  (Doc. 59.)

DATED this 12th day of March, 2013.

Stephen M. McNamee
Senior United States District Judge